**PEOPLE OF STATE OF CALIFORNIA,**
Plaintiff,

v.

**Pablo REYES, Defendant.**

**No. CV–F–92–5760 REC.**

United States District Court,
E.D. California.

Nov. 10, 1992.

### ORDER GRANTING MOTION TO QUASH SUBPOENA

COYLE, Chief Judge.

On November 9, 1992 the court heard the Motion to Quash Subpoena filed by the Unit-

---

ed States in this removed action. Upon due consideration of the written and oral arguments of the parties and the record herein, the court grants this motion for the reasons set forth herein.

Pablo Reyes is a defendant in criminal proceedings in the Tulare County Municipal Court. Mr. Reyes is charged with disrupting a public meeting, refusing to disperse and resisting, obstructing or delaying a police officer. These charges arose out of a demonstration before the Dinuba School Board on January 6, 1992.

Joel Benevides is a mediator employed by the Community Relations Service (hereinafter CRS of the Department of Justice.)

On October 22, 1992, Tom McGuire, counsel for Mr. Reyes, issued a trial subpoena to Mr. Benevides. Mr. McGuire's declaration in support of the subpoena states in pertinent part:

Based on my preparation and knowledge concerning the facts of this case, I am informed and believe that the presence of Joel Benevides, Community Relations Service, U.S. Department of Justice, 211 Main Street, Suite 1040, San Francisco, Ca 94105 is necessary to help prove the innocence of defendant.

On October 30, 1992, Mr. Benevides was advised by Linda Martin–Crawford, General Counsel, that Mr. Benevides was not authorized pursuant to 28 C.F.R. § 16.22 to testify or produce documents in response to the subpoena. Apparently in response to this, Mr. Reyes then filed a motion to dismiss the charges against him on the ground that his inability to compel the testimony of Mr. Benevides deprives him of his right to a fair trial. That motion was set to be heard by the Municipal Court on November 2, 1992 at 8:30 a.m. According to the Motion to Quash before this court, defense counsel, the district attorney, the U.S. Attorney, and the Municipal Court's scheduling deputy agreed that the United States would file a Motion to

Quash the subpoena which would be heard at the same time as Mr. Reyes' Motion to Dismiss. The United States, acting through Assistant United States Attorney Daniel Bensing, moved the Tulare County Municipal Court to quash this subpoena. On November 4, 1992, the Honorable Ronn M. Couillard issued an order denying this motion, ruling in pertinent part as follows:

Finding made that Mr. Joel Benevides is a relevant witness to this case in that he allegedly gave to the school superintendent a document containing issues that were to be placed on the agenda to be heard at a school board meeting.

At the request of Mr. Bensing, Judge Couillard gave this order a civil number to facilitate the removal of the subpoena to the federal court. On November 6, the following document was issued by Judge Couillard:

Proof of service of subpoena on Joel Benevides filed. Bench warrant to issue with bail set at $500, warrant stayed until 11–10–92.

On November 6, the United States removed the subpoena to this court pursuant to 28 U.S.C. § 1442.[1] On November 6, 1992, William Lucas, Acting Director of CRS, wrote to Mr. Benevides, reconfirming Ms. Martin–Crawford's advice and instructing Mr. Benevides "that you were not and are not now authorized to testify or produce documents in [People v. Pablo Reyes]." Mr. Lucas further states:

There are several reasons for this determination. The ... CRS ... is charged with providing assistance to communities in resolving sensitive ethnic conflicts. CRS provides this service essentially through conciliation and mediation. Our effectiveness is based on the ability to hear both sides of a conflict and peacefully bring the disputants to the negotiating table. In order to carry out its mission, CRS must maintain the public trust that disputants can discuss their problems and interests

---

**1.** 28 U.S.C. § 1442(a)(3) provides in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place where it is pending:

. . . . .

(3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties....

candidly without fear that information which CRS gains may then be used against them, or that CRS' very presence compromises the conciliation/mediation process.

In your particular instance, there are several issues which will affect CRS future services. First, CRS effectiveness in conciliating/mediating the conflict between the School Board of Dinuba and MAPA, the basis for this subpoena, will be 'chilled' from using either you personally, or CRS in the future, knowing that we can be called as witnesses. For example, other school boards and school board superintendents will learn of this incident and would be discouraged from using CRS. Second, parties to future disputes will be able to manipulate the conciliation/mediation process. Third, CRS will take on the appearance of an arm of law enforcement. Your testimony would appear to violate the statutory requirement that CRS employees not engage in prosecution or investigative functions in litigation arising out of their cases. See 42 U.S.C. § 2000g–(b). Fourth, CRS will lose its actual and appearance of neutrality. Fifth, neither you nor CRS will be able to assure parties that our services are confidential or neutral. This is a significant and persuasive basis for convincing disputants to use our services. Loss of this assurance will have a major impact on CRS ability to do its job. Finally, if you were to testify the credibility of the mediation/conciliation profession generally would suffer.

By letter to Mr. Bensing dated November 9, 1992, Judge Couillard states that he issued and held the bench warrant "in belief that this action may have been necessary to facilitate the action which your letter states will be filed today in federal court."

The function of the CRS is set forth at 42 U.S.C. § 2000g–1:

> It shall be the function of the Service to provide assistance to communities and persons therein in resolving disputes, disagreements, or difficulties, relating to discriminatory practices based on race, color, or national origin which impair the rights of persons in such communities under the Constitution or laws of the United States

> or which affect or may affect interstate commerce. The Service may offer its services in cases of such disputes, disagreements, or difficulties whenever, in its judgment, peaceful relations among the citizens of the community involved are threatened thereby, and it may offer its services either upon its own motion or upon the request of an appropriate State or local official or other interested person.

42 U.S.C. § 2000g–2 further provides in pertinent part:

> (a) The Service shall, whenever possible, in performing its functions, seek and utilize the cooperation of appropriate State or local, public, or private agencies.

> (b) The activities of all officers and employees of the Service in providing conciliation assistance shall be conducted in confidence and without publicity, and the Service shall hold confidential any information acquired in the regular performance of its duties upon the understanding that it would be so held. No officer or employee of the Service shall engage in the performance of investigative or prosecuting functions of any department or agency in any litigation arising out of a dispute in which he acted on behalf of the Service. Any officer or other employee of the Service, who shall make public in any manner whatever any information in violation of this subsection, shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000 or imprisoned not more than one year.

Moreover, 28 C.F.R. §§ 16.21 *et seq.* sets forth procedures to be followed in obtaining information and/or testimony in state court proceedings from employees of the Department of Justice. Section 16.21(a) provides in pertinent part:

> (a) This subpart sets forth procedures to be followed with respect to the production or disclosure of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired by any person while such person was an employee of the Department as part of the performance of that person's

official duties or because of that person's official status:

. . . . .

(2) In all . . . state proceedings in which the United States is not a party, including any proceedings in which the Department is representing a government employee solely in that employee's individual capacity, when a subpoena, order, or other demand . . . of a court . . . is issued for such material or information. . . .

Section 16.22 provides in pertinent part:

(a) In any . . . state case . . . in which the United States is not a party, no employee . . . shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department of Justice official in accordance with §§ 16.24 and 16.25 of this part.

(b) Whenever a demand is made upon an employee . . . the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located. The responsible United States Attorney shall follow procedures set forth in § 16.24 of this part.

(c) If oral testimony is sought by demand in any case or matter in which the United States is not a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by his attorney, setting forth a summary of the testimony sought and its relevance to the proceeding must be furnished to the responsible U.S. Attorney. Any authorization for testimony by a present . . . employee of the Department, shall be limited to the scope of the demand as summarized in such statement.

28 C.F.R. § 16.24 sets forth procedures governing the submission of the demand to the Assistant Attorney General for resolution.

■ A threshold issue is the subject matter jurisdiction of this court to hear this Motion to Quash in the absence of an actual order by Judge Couillard holding Mr. Benevides in contempt for refusing to testify in reliance upon the above-quoted statute and regulations. It is clear from the record before the court that Judge Couillard has every intention of doing so in the absence of a ruling from this court that he does not have the authority to do so. There is no question that contempt proceedings initiated in state court against federal officials for refusal to testify are removable pursuant to 28 U.S.C. § 1442. *Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir.1986). Consequently, this court rules that it has subject matter jurisdiction pursuant to Section 1442.

The United States' Motion to Quash is based on two grounds.

■ The first is the failure of Mr. McGuire, counsel for Mr. Reyes, to comply with the regulations of the Department of Justice quoted above. There can be no question that Mr. McGuire has not done so. No affidavit setting forth a summary of the testimony sought and its relevance to the criminal action has been filed. 28 C.F.R. § 16.-23(c). As noted, the subpoena merely states that Mr. Benevides' testimony "is necessary to help prove the innocence of defendant." In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), the United States Supreme Court ruled that a subordinate official of the Justice Department could not be held in contempt for refusing, in a habeas corpus proceeding brought by a state prisoner, to obey a subpoena duces tecum when his compliance had been prohibited by an order of a superior department official pursuant to valid federal regulations governing the release of official documents.[2] Consequently, the state court lacks jurisdiction to use contempt procedures against Mr.

---

**2.** Moreover, the failure of defense counsel to follow these regulations in seeking testimony or evidence governed by them moots any subsequent contention that a refusal to testify because of that failure violates a defendant's constitution-

al rights. *United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir.1981); *United States v. Allen*, 554 F.2d 398, 406–407 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977).

Benevides in the event he refuses to testify. *Swett v. Schenk, supra,* 792 F.2d at 1451.[3]

 The second ground asserted by the United States in support of this Motion to Quash is the fact that CRS has determined by disclosure of the information sought by Mr. Reyes would breach the confidentiality requirements of 42 U.S.C. § 2000g–2(b). The United States further points out that this matter has not yet been submitted to the Assistant Attorney General for resolution. The United States refers the court to *City of Port Arthur, Texas v. United States,* 517 F.Supp. 987 (D.D.C.1980), wherein the District of Columbia District Court refused to enforce a subpoena issued by the United States District Court for the Northern District of Texas to an employee of CRS and commanding his deposition and the production of records made in conjunction with the electoral mediation effort conducted by him in Port Arthur. The District of Columbia District Court held in pertinent part:

> The effectiveness of the CRS is ... dependent upon the actual and perceived impartiality of its mediators. The public interest in maintaining this impartiality greatly outweighs plaintiff's need for Mr. Greenwald's testimony. This is particularly true because the information sought from Mr. Greenwald can be obtained from other participants in the mediation sessions.

According to the United States, Mr. Benevides was not present at the school board meeting at which the disturbances occurred leading to the charges against Mr. Reyes. According to Mr. McGuire and Mr. Gonzalez, counsel for Mr. Reyes' co-defendant, they have subpoenaed Mr. Benevides to testify that he delivered a document to the Superintendent, that the Superintendent crumpled it up and threw it in the trash, and that the document was a request by MAPA for items to be placed on the school board meeting agenda. However, Mr. McGuire and Mr. Gonzalez conceded that three other persons plus the Superintendent were present when this alleged incident took place and that MAPA members could testify as to the contents of the documents.

Given that defense counsel presented nothing to the court from which the relevance of these facts to any legitimate defense to the crimes charged may be inferred and given that these facts can be solicited from these other witnesses, the court quashes the subpoena issued to Mr. Benevides by Mr. McGuire rather than compromise the congressional mandate for confidentiality and the Department of Justice regulations for the provision of evidence by Department of Justice employees in state court actions in which neither they nor the United States are parties.

ACCORDINGLY, IT IS ORDERED that the United States' Motion to Quash Subpoena is granted.

---

**3.** The United States argues that the proper method to be used by Mr. Reyes to challenge such a determination is to institute a separate action in federal court under the Administrative Procedures Act. *See Swett v. Schenk, supra,* 792 F.2d at n. 2; *Davis Enterprises v. U.S. EPA,* 877 F.2d

1181, 1184–1186 (3d Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990). However, the court finds it unnecessary to resolve this issue in order to rule on the Motion to Quash.